Filed 8/16/23  P. v. Martin CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078496 |
| v. | (Super.Ct.No. CR14997) |
| MICHAEL ANTOINE MARTIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.  Affirmed.

Jennifer A. Gambale, by appointment of the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

In 1977, defendant and appellant Michael Antoine Martin participated in multiple robberies.  During one of these robberies, defendant's coparticipant, David Benard (Benard), discovered that their victim was employed as a correctional officer and shot the victim.  Defendant was convicted of murder on a felony murder theory as a result of this incident and sentenced to life in prison for the murder conviction.

In 2019, defendant filed a petition for resentencing pursuant to Penal Code[1] section 1172.6.[2]  The trial court issued an order to show cause, considered evidence submitted by the parties, and denied the petition after concluding that the evidence showed beyond a reasonable doubt that defendant is guilty of murder under the current state of the law as a major participant in the robbery who acted with reckless disregard for human life.

Defendant appeals, arguing (1) the trial court erred by considering his sworn parole hearing testimony as evidence; (2) there was insufficient evidence to support the trial court's finding that defendant was a major participant who acted with reckless disregard for human life; and (3) the trial court erred by failing to consider defendant's

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Defendant brought his petition under former section 1170.95, which was renumbered as section 1172.6 without substantive change on June 30, 2022.  (Stats. 2022, ch. 58, § 10.)  As such, we refer to the statute by its current number throughout this opinion whenever possible.

2

youth as a factor in making its findings. We disagree with each of these contentions and affirm the order.

## II. FACTS & PROCEDURAL HISTORY

A. *Background*

In 1977, defendant participated in a series of armed robberies. One of these robberies resulted in the death of the victim on August 21. Defendant was charged with murder (count 1; § 187, subd. (a)) and robbery (count 2; § 211) arising out of the August 21 incident. A jury convicted defendant on both counts, and defendant was sentenced to life in state prison with the possibility of parole for the murder conviction.[3]

In 2019, defendant filed a petition for resentencing pursuant to section 1172.6, and the trial court issued an order to show cause on the petition in December 2020. Among other items, the prosecution submitted the following documentary evidence in response to the order to show cause: (1) the record of defendant's trial on the issue of guilt; (2) the record of defendant's trial on the issue of sanity; and (3) a parole hearing statement given by defendant in 2012.

---

[3] The same jury also convicted defendant of attempted murder (count 4; §§ 187, subd. (a), 664) and three additional counts of robbery (counts 5, 6, 7; § 211) arising from different incidents. Defendant's sentence also included a determinate term of 12 years in state prison as a result of these additional convictions.

B. *Summary of Relevant Trial Evidence*[4]

    1.  Physical Evidence

On August 24, 1977, the murder victim's body was discovered on a hillside along a remote road in Riverside County. The victim was lying face down with his arms outstretched, a pool of blood around his head, and a spent shotgun shell near his feet. The victim had been reported missing since August 21.

On August 24, 1977, Benard and an associate, Michael Atkinson (Atkinson), were arrested by sheriff's deputies in Los Angeles County. Benard and Atkinson were traveling in the same vehicle at the time. A sawed-off shotgun and sawed-off rifle were discovered in the vehicle. The shotgun was later determined to be the weapon that fired the expended shotgun shell discovered near the victim's body.

On August 25, 1977, defendant and two friends were arrested by police in the City of Long Beach. At the time, defendant and his friends were found together in the victim's vehicle. The victim's watch, a revolver, and a box of shotgun shells were found in their possession. The shotgun shells were later determined to be of the same type used to kill the victim.

---

[4] Defendant's trial involved multiple offenses unrelated to his conviction for murder (count 1) and robbery (count 2) arising out of the incident on August 21, 1977. Because defendant challenges only the sufficiency of the evidence with respect to the trial court's finding that he was a major participant who acted with reckless disregard for human life with respect to the August 21 incident, we summarize only the evidence relevant to this finding.

## 2. Testimony of Defendant's Friend

One of the friends arrested with defendant testified under a grant of immunity. He first saw defendant driving the victim's vehicle on the evening of August 21, 1977.[5] Initially, defendant represented to his friends that the vehicle belonged to defendant's girlfriend.

Prior to their arrest, defendant gave the friend a watch, which defendant removed from an attaché case where defendant also stored a revolver. Defendant mentioned that the friend was " 'wearing a dead man's watch' " and used this reference at least four or five times to refer to the watch. When the friend told defendant to stop joking, defendant responded that he was " 'serious.' " The friend stated that defendant would provide alternating explanations that "[defendant's] partner and him . . . killed a dude and left him in the hills" or "[defendant's] partner shot a dude and left him in the hills."

The friend recalled that, as law enforcement approached them prior to their arrest, defendant initially appeared to overreact and stated that he should "bust." The friend explained that "bust" was slang for "shoot." Because his friends did not believe they had done anything wrong, they convinced defendant not to shoot at the police.

---

[5] The witness testified that he first saw defendant driving the vehicle on the Sunday before his arrest, which would have been August 21, 1977. The exact date was reaffirmed during this same witness's testimony during defendant's trial on the issue of sanity.

3. Testimony of Defendant's Cellmate

A cellmate confined with defendant in the county jail testified that he had a conversation with defendant regarding the August 21, 1977 incident. Defendant told the cellmate that he and Benard parked a vehicle on the side of a road and raised the hood of the vehicle. The victim drove up in a separate vehicle and stopped to offer assistance. Benard led the victim up a nearby hill while defendant searched the victim's vehicle, but he returned alone and told defendant he had shot the victim. Defendant told the cellmate that after Benard killed the victim, Benard expressed a desire to seek out and kill the victim's family, but defendant dissuaded Benard from doing so.

4. Testimony of Truck Driver

A truck driver testified that at approximately 6:15 a.m. on August 21, 1977, he was driving down a remote stretch of road in Riverside County on his way to work. He saw two vehicles parked along the side of the road near the location that the victim's body was later discovered. One of the vehicles had emergency flashing lights engaged. The truck driver stopped his vehicle to offer assistance but drove away because he could not see any individuals near the vehicles.

5. Testimony of David Benard

Benard was called to testify as a defense witness. He had already been tried separately and convicted of first degree murder, and he admitted to killing the victim on August 21, 1977.

According to Benard, in the early morning of August 21, 1977, he and defendant had been smoking phencyclidine (PCP) for some time when the two began to discuss a

6

plan to commit a robbery. Benard proposed that the two men park a vehicle on the side of a remote road, act as if the vehicle had stalled, and rob any individual who stopped to offer assistance. Defendant agreed to participate and initially appeared eager to do so, but he became hesitant over time. Benard and defendant drove together in a vehicle to a remote area, parked the vehicle along the side of the road, and raised the hood of the vehicle to suggest the vehicle was experiencing a mechanical problem. Benard stood next to the vehicle, while defendant hid behind a nearby boulder.

Eventually, the victim drove by in a separate vehicle, pulled to the side of the road, and offered to help Benard. As the victim approached Benard, Benard pulled out a gun, and stated, " 'This is a robbery.' " Benard riffled through the victim's wallet while defendant removed a watch from the victim's wrist. During this time, Benard discovered an identification card that indicated the victim was employed as an officer with the Department of Corrections. Benard reacted emotionally to the discovery, told defendant to take the victim's watch and vehicle, and told defendant "to take off and meet me at my parents' house." Benard believed that defendant left the scene at this point.

After defendant left the scene, Benard walked the victim up a nearby hill, shot the victim in the head, returned to the vehicle he had initially driven to the scene, and drove away. Benard insisted that he never told anyone he had killed the victim. Instead, when Benard finally saw defendant again, Benard told defendant that he hit the victim in the head.

On cross-examination, Benard admitted he had previously given a different version of the murder when speaking with a defense expert retained in his separate trial.

7

In a prior version of events, Benard conveyed that all of his criminal associates participated in the planning of crimes, stating that they would " 'all put in [their] own ideas,' " and further stating that each coparticipant would "elaborate on it and figure out the best moves" to accomplish the crime. Benard also previously admitted that, during the August 21 incident, he initially held a revolver when searching the victim while defendant held the victim at gunpoint with a shotgun. In this prior version of events, Benard became enraged upon discovering the victim was employed as a correctional officer and ordered the victim to walk up a nearby hill. After the victim complied, defendant expressed to Benard that the two men should leave; but they instead traded guns and defendant left on his own.

The prosecutor also attempted to impeach Benard with prior statements made to Atkinson. Benard was asked whether he had confessed to Atkinson that he expressly told defendant of his intent to kill the victim before defendant left the scene. In response, Benard repeatedly refused to answer the question, stating, "I don't want to go into that," and later equivocated by stating that he was uncertain of the specific words he used when describing the incident to Atkinson.

6. Testimony of Atkinson

Atkinson testified that he was a criminal associate of both defendant and Benard. He participated with defendant and Benard in planning two robberies that occurred prior to the events of August 21. All three men were armed with firearms during these robberies, and defendant supplied Atkinson with a firearm for this purpose. Atkinson

8

confirmed that during one of these robberies, defendant pointed a firearm at one of the victims and fired into the victim's vehicle.

Atkinson also testified in rebuttal to Benard's testimony. He testified that he had a conversation with Benard following the events of August 21, 1977. During this conversation, Benard stated that while committing a robbery with defendant, Benard discovered that the victim was employed as a correctional officer, commented to defendant that he held a disdain for correctional officers, and told defendant, " 'I'm going to kill [the victim].' " Benard then stated that he sent defendant away from the scene.

7. Testimony of Benard's Defense Expert

A clinical researcher testified that he was retained as a defense expert in Benard's separate trial and conducted an interview of Benard in preparation for that case.[6] In this interview, Benard stated that after discovering the victim's identity, both Benard and defendant walked the victim up a hill with the intent to tie up the victim. However, the two men could not find any rope and, at some point, defendant walked away and Benard proceeded to shoot the victim. At the time of the interview, Benard claimed to have consumed a large quantity of drugs immediately prior to the murder and appeared to be having great difficulty recalling the events of the murder with precision.

---

[6] The same clinical researcher was also called as a defense witness in defendant's case for the purpose of providing expert testimony on the effects of PCP use on mental capacity and behavior.

9

8. Evidence of Prior Robberies

Defendant's trial involved charges related to at least two robberies committed in August 1977, prior to the robbery and murder of August 21.

A victim testified that during the first robbery, he was driving his vehicle on the freeway and was hit from behind by a second vehicle. When the victim pulled to the side of the road, defendant and Benard exited the second vehicle, brandished firearms, and ordered the victim to hand over his wallet. Defendant threatened the victim by stating, "Do you want to die? Do you want to die?"; ordered Benard to hold the victim at gunpoint; and instructed Benard to "blow [the victim's] head off" if the victim moved.

Multiple victims testified that, during the second robbery, they were traveling on the freeway when their vehicle was hit from behind by a second vehicle. When the victims pulled their vehicle to the side of the road, defendant and Atkinson exited the second vehicle, brandished firearms, and ordered the victims to hand over their possessions. As the defendant and Atkinson were leaving the scene, defendant fired his gun into the victims' vehicle, striking the headrest of the seat where one of the victims was seated.

C. *Summary of Defendant's Parole Hearing Testimony*

Defendant testified in a parole suitability hearing in 2012. Defendant admitted that he staged a highway robbery with Benard by stopping their vehicle on the side of a road and pretending that the vehicle had broken down. When the victim stopped to offer assistance, Benard brandished a firearm and took the victim's possessions. Benard discovered the victim was employed as a correctional officer when searching the victim's

10

wallet, made a statement that the victim was one of the people who "used to mess with me in prison," gave defendant the victim's watch, and told defendant to take the victim's car. Defendant left the scene and did not see Benard again prior to defendant's arrest.

Defendant believed that he could have prevented the murder if he had stayed, but he was adamant that he did not know why Benard had asked him to leave and had left the scene prior to the murder. Defendant was also adamant that Benard never told him directly of an intent to murder the victim. However, defendant admitted that, looking back, Benard's comments suggested the possibility that he intended to kill the victim. Defendant also admitted that, had Benard asked him to stay and assist with the murder, defendant would have done so at the time.

Defendant admitted that he and Benard had used the same plan or method to commit robberies on eight to 10 occasions prior to the murder. Defendant initially claimed that the two had never shot or killed anyone with their weapons during these robberies. However, he later admitted he had previously shot at a victim during a robbery, and further admitted that he had previously witnessed Benard shoot a woman in the face.

D. *Evidentiary Hearing*, *Findings*, *and Order on Resentencing Petition*

The trial court held an evidentiary hearing on the petition on January 14, 2022. However, the parties declined to present any further evidence or argument and elected to submit the matter on the documentary evidence and written arguments that had already been presented.

11

On January 18, 2022, the trial court issued a written order denying defendant's petition for resentencing. Specifically, the trial court found that the evidence presented for its consideration was "overwhelming that defendant was a major participant in the robbery of [the murder victim] and that in doing so, [defendant] acted with reckless disregard for human life." As such, the trial court concluded that the prosecution had met its burden to show beyond a reasonable doubt that defendant could be convicted of murder under the current law and was ineligible for resentencing. Defendant appeals from the order denying his resentencing petition.

## III. DISCUSSION

On appeal, defendant argues that reversal of the trial court's order denying his petition for resentencing is required because (1) the trial court relied on parole hearing testimony that should have been excluded as either compelled or involuntary testimony; (2) insufficient evidence supports the trial court's finding that defendant was a major participant who acted with reckless disregard for human life during the commission of the August 21 robbery; and (3) the trial court failed to properly consider defendant's youth as a factor when making its findings. We conclude that reversal is not required on any of these grounds.

A. *Legal Background*

"Our Legislature enacted what is now section 1172.6 and simultaneously amended sections 188 and 189 in order to eliminate criminal liability for murder, attempted murder, and manslaughter absent a showing of the defendant's *personal* intent . . . . Now, a conviction for these crimes requires proof that the defendant (1) was the actual

12

killer . . . , (2) directly aided and abetted the actual killer while acting with the intent to kill, or (3) was a major participant in a felony who acted with reckless indifference to the value of human life." (*People v. Duran* (2022) 84 Cal.App.5th 920, 927 (*Duran*).)

"[S]ection 1172.6 is the statutory mechanism for determining whether to *retroactively* vacate a final murder . . . conviction that does not comply with the new, narrower definitions." (*Duran*, *supra*, 84 Cal.App.5th at p. 927.) "A defendant seeking relief under section 1172.6 must 'file a petition' alleging entitlement to relief along with '[a] declaration' attesting to eligibility for relief. [Citation.] If the defendant 'makes a prima facie showing' of entitlement to relief . . . , then the court must in most cases convene an evidentiary hearing where the People bear the burden of establishing beyond a reasonable doubt that the defendant is guilty of the pertinent crime under the new, narrower definitions." (*Ibid.*)

" 'The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . . The prosecutor and petitioner may also offer new or additional evidence to meet their respective burdens.' " (*People v. Patton* (2023) 89 Cal.App.5th 649, 656; *Duran*, *supra*, 84 Cal.App.5th at p. 927.)

B. *Defendant's Parole Hearing Testimony Was Admissible*

Defendant's first argument on appeal is that the trial court should have excluded consideration of his parole hearing testimony. Defendant does not argue that such

evidence is prohibited under the Evidence Code,[7] but he instead argues that parole hearing testimony should be excluded as involuntary testimony or, alternatively, considered compelled testimony subject to the use immunity doctrine. We disagree.

" 'The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles. [Citation.]' [Citation.] An involuntary confession is inadmissible for any purpose . . . ." (*People v. Jimenez* (2021) 73 Cal.App.5th 862, 875-876; *People v. Sanchez* (2019) 7 Cal.5th 14, 50 [" ' "[A]n involuntary confession may not be introduced into evidence at trial." ' "].) A closely related doctrine is that of use immunity, which is " 'immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom' " that is intended to overcome any claim that compelled testimony violates a witness's Fifth Amendment rights. (*People v. Cooke* (1993) 16 Cal.App.4th 1361, 1366.) "Whether use immunity exists and whether a statement is involuntary within the meaning of due process are questions of law we review de novo." (*Duran*, *supra*, 84 Cal.App.5th at p. 928.)

In this case, defendant specifically objected to the consideration of his parole hearing testimony on the ground that it was compelled testimony subject to the use

---

[7] Generally, evidence of a party's prior statements is admissible "when offered against the declarant in an action to which he is a party in either his individual or representative capacity . . . ." (Evid. Code, § 1220; *People v. Flinner* (2020) 10 Cal.5th 686, 735.)

14

immunity doctrine. The trial court overruled the objection, relying on *People v. Myles* (2021) 69 Cal.App.5th 688 (*Myles*).

In *Myles*, our colleagues in the First District Court of Appeal considered and rejected the claim that parole hearing testimony should be considered per se involuntary or that a defendant is entitled to use immunity for such testimony. (*Myles*, *supra*, 69 Cal.App.5th at p. 706.) In doing so, the court reasoned that parole hearing testimony cannot be considered coerced or involuntary per se because a defendant is "not compelled to file a [section 1172.6] petition, nor testify at [a] parole hearing, nor to participate in [a] risk assessment interview"; and, "[h]aving chosen to . . . testify truthfully at the parole hearing, it is not fundamentally unfair to admit that information during a resentencing proceeding voluntarily initiated by defendant bearing on some of the same issues." (*Myles*, at p. 706.) The Court of Appeal further explained that the use immunity doctrine does not apply because admission of such evidence at a hearing under section 1172.6 does not implicate a defendant's Fifth Amendment rights, since a sentence modification proceeding under the statute is an act of lenity and not a criminal trial. (*Myles*, at p. 706.)

Defendant contends the trial court erred by following *Myles* because *Myles* was wrongly decided. However, we observe that numerous published decisions by the Court of Appeal have since endorsed the conclusion reached in *Myles*. (*Duran*, *supra*, 84 Cal.App.5th at pp. 928-932; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 588-590; *People v. Anderson* (2022) 78 Cal.App.5th 81, 88-93.) In our view, the analysis presented in these cases is sound, and defendant has not directed our attention to any published decision that has reached a contrary conclusion. Thus, the weight of authority

15

clearly holds that the mere fact that defendant's sworn statement was given in the context of a parole hearing does not establish that the statement was involuntary or subject to use immunity.

Defendant also argues that, even if not categorically inadmissible, the parole hearing testimony in his specific case should be considered involuntary. We conclude that the record is inadequate to support this conclusion.

Generally, when faced with a claim of involuntariness, a reviewing court " ' " 'must examine the uncontradicted facts surrounding the making of the statements to determine independently whether the prosecution met its burden and proved that the statements were voluntarily given without previous inducement, intimidation or threat.' " ' " (*People v. McWhorter* (2009) 47 Cal.4th 318, 346.) In doing so, we " ' " ' "accept the version of events which is most favorable to the People, to the extent that it is supported by the record." ' " ' " (*Ibid.*) However, defendant has not directed our attention to anything in the record that would permit this court to conclude that his parole hearing testimony was involuntary.

We observe that "parole cannot be conditioned on admission of guilt to a certain version of the crime." (*Myles*, *supra*, 69 Cal.App.5th at p. 706; § 5011, subd. (b); Cal. Code Regs., tit. 15, § 2236.) While a parole hearing offers the candidate for parole the right to speak on his or her own behalf, there is no requirement or compulsion that he or she do so, or that he or she admit guilt to a certain version of the crime as a condition of a parole grant. The right of allocution at a parole hearing cannot, standing alone, support a conclusion that parole hearing testimony was compelled or involuntary.

16

Defendant suggests that because he had previously been denied parole on numerous prior occasions and the presiding commissioner asked defendant to provide his " 'most recent statements concerning the commitment offense,' " we should infer that defendant was induced to provide self-inculpatory testimony. However, the record in this case does not contain any prior statements offered by defendant at the time of any prior parole suitability proceedings. Absent a record containing prior parole suitability hearing statements, it would be speculative for this court to conclude that defendant was pressured to testify to a certain version of events simply because he had previously been denied parole on prior occasions. If defendant offered no testimony regarding the commitment offense in prior hearings or offered testimony that did not materially differ from that offered in his 2012 parole suitability hearing, there would be no basis to conclude he was pressured into testifying to any specific version of the crime.

We do not foreclose the possibility that case-specific circumstances may rise to the level of coercion rendering parole hearing testimony involuntary. We hold only that the record provided in this case is not sufficient to permit us to reach such a conclusion here. Because we agree with the weight of authority that parole hearing testimony is not categorically inadmissible and further conclude that, on this record, defendant has not shown that his parole hearing testimony was involuntary or coerced, such that it should have been excluded as inadmissible, we find no error warranting reversal on this basis. Absent error, we have no occasion to consider the issue of prejudice.

C. *Substantial Evidence Supports the Trial Court's Findings*

Defendant's second argument on appeal is that the trial court erred in finding he was a major participant in the August 21, 1977 robbery who acted with reckless disregard for human life. "A trial court's factual findings at a section 1172.6, subdivision (d)(3), hearing are reviewed for substantial evidence." (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1017; *People v. Nieber* (2022) 82 Cal.App.5th 458, 476; *People v. Clements* (2022) 75 Cal.App.5th 276, 298 [same]; *People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125 [same].) "Under this standard, ' "we review the entire record in the light most favorable to the judgment to determine whether it contains . . . evidence that is reasonable, credible, and of solid value . . . from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt," ' " and we " ' "presum[e] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*Nieber*, at p. 476.) We conclude substantial evidence in the record supports the trial court's findings in this case.

1. Substantial Evidence Supports a Finding Defendant Was a Major Participant

"To be a major participant, 'a defendant's personal involvement must be substantial, greater than the actions of *an ordinary aider and abettor to an ordinary felony murder . . . .*' [Citation.] 'The ultimate question pertaining to being a major participant is "whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " ' " (*People v. Rodriguez* (2021) 66 Cal.App.5th 749, 768-769.) "[W]hat is required is that petitioner was a major participant in a robbery known to carry a grave risk of death, not

that he was a major participant in the murder." (*People v. Richardson* (2022) 79 Cal.App.5th 1085, 1092.) Factors to consider include: " 'What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used? *No one of these considerations is necessary*, nor is any one of them necessarily sufficient.' " (*Rodriguez*, at p. 768; *People v. Banks* (2015) 61 Cal.4th 788, 803.)

Here, the record contains testimony that Benard had previously described his relationship with criminal associates as very collaborative in planning the methods used to accomplish any given crime. Further, defendant acknowledged in his parole hearing testimony that he had previously participated in at least eight to 10 robberies using a similar plan prior to the August 21, 1977 robbery. This was substantial evidence upon which the trial court could rely to conclude defendant had a direct role in planning the August 21 robbery that led to the victim's death.

The record also contains evidence to support at least one version of the murder in which defendant supplied Benard with the very weapon used to kill the victim. Specifically, Benard admitted on cross-examination that he had previously conveyed that defendant initially held the victim at gunpoint with a shotgun and that the two men

19

switched guns only after they had forced the victim to walk up a nearby hill. The physical evidence supports this version of the murder, as defendant was arrested while traveling in the victim's vehicle but was in the possession of a box of shotgun shells matching the type used to kill the victim. This was substantial evidence that could support a reasonable inference that defendant initially wielded the shotgun during the commission of the robbery and intended to keep the shotgun but decided to provide Benard with the shotgun in order to facilitate the killing.

Benard directly testified that both he and defendant were armed during the August 21, 1977 robbery, and defendant confirmed this fact in his parole hearing testimony. Defendant also testified at his parole hearing that he had previously shot at a victim during one prior robbery and testified that he had witnessed Benard shoot at a different victim on a separate occasion. This was substantial evidence upon which the trial court could rely to conclude defendant was aware that the August 21 robbery involved the use of deadly weapons and that Benard was willing to inflict deadly force on a victim.

Benard's defense expert testified that Benard had previously provided a version of events in which defendant actively assisted Benard in walking the defendant away from the road to the location of the murder with the intent to tie up the victim. This version of the murder is also supported by the testimony of the truck driver, who testified that he stopped next to two vehicles parked along the side of the road on the morning of the murder but could not locate any individuals standing near the vehicles, suggesting there was indeed a period of time in which Benard, defendant, and the victim had all walked

20

away from the vehicles. This was substantial evidence upon which a trier of fact could rely to conclude that defendant was not only present during the robbery but also present at the location of the killing.

Atkinson testified that Benard confessed to a version of the murder in which Benard expressly told defendant of his intent to kill the victim. In his parole hearing testimony, defendant did not agree that Benard expressly stated an intent to kill the victim but did acknowledge that Benard's words at the time suggested the possibility. This was substantial evidence upon which the trier of fact could rely to conclude that defendant had actual knowledge of Benard's intent to kill the victim.

Defendant's cellmate testified that defendant claimed to have dissuaded Benard from seeking out and killing the victim's family after Benard had killed the victim, and a victim from a prior robbery testified that Benard appeared to be the one taking orders from defendant. Benard admitted on cross-examination that he had previously given a version of events in which he and defendant discussed whether to leave after walking the victim up the hillside but that defendant, instead, decided to give the shotgun to Benard and leave Benard with the victim. Finally, during defendant's parole hearing testimony, defendant acknowledged that there may have been things he could have done to prevent the murder, but he would have been more inclined to assist with the murder rather than prevent it at the time.[8] This was substantial evidence to support the conclusion that

---

[8] Specifically, defendant was asked: "[I]f your crime partner said, 'No, stay here with me. Help me with [the murder].' [W]ould you have stayed?" Defendant

defendant was in a position to prevent the actual murder but, instead, acted in a manner to facilitate rather than prevent the murder.

Given the above, we conclude there is substantial evidence in the record to show that almost all of the relevant factors weigh in favor of finding defendant was a major participant in the robbery of August 21, 1977 that resulted in the death of a victim. Even without defendant's parole testimony, the substantial evidence compellingly supports the trial court's determination that defendant was a major participant in the robbery.

2. Substantial Evidence Supports a Finding Defendant Acted with Reckless Indifference to Human Life

"To determine whether a defendant acted with reckless indifference to human life, we 'look to whether a defendant has " 'knowingly engag[ed] in criminal activities known to carry a grave risk of death.' " [Citation.]' [Citation.] 'The defendant must be aware of and willingly involved in the violent manner in which a particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create.' " (*People v. Saibu* (2022) 81 Cal.App.5th 709, 739-740.) Factors to consider include (1) the defendant's knowledge and use of weapons, and the number of weapons used in the commission of the crime; (2) the defendant's physical presence at the crime scene such that he or she had opportunities to limit the crime or aid the victim; (3) the duration of the felony; (4) the defendant's knowledge of his or her coparticipants'

---

responded: "Probably at that time, I think I would have . . . . Yeah, I would have to say I probably would."

likelihood of killing; and (5) whether defendant made any efforts to minimize the risk of violence. (*People v. Clark* (2016) 63 Cal.4th 522, 618-622 (*Clark*); *Saibu*, at p. 740.) There is "significant overlap" between the element of being a major participant and having reckless indifference to human life (*In re Bennett* (2018) 26 Cal.App.5th 1002, 1015 (*Bennett*)) and, as we explain, much of the same evidence leads us to conclude that the trial court's finding that defendant acted with reckless indifference to human life is also supported by substantial evidence.

As we have already detailed, there was substantial evidence in the record to show: (1) defendant knew Benard was armed with a firearm at the time of the August 21, 1977 robbery; (2) defendant may have deliberately given Benard the shotgun in an effort to facilitate the murder; and (3) defendant was present during the robbery but also assisted Benard with taking the victim to the location of the murder. Thus, substantial evidence supports a conclusion that the first two *Clark* factors weigh in favor of finding defendant acted with reckless indifference.

We have also already detailed that there was substantial evidence in the record to show: (1) defendant had personally witnessed Benard shoot directly at a robbery victim on at least one prior occasion; (2) Benard expressly or impliedly told defendant of his intent to kill the victim; (3) defendant could have been successful in dissuading Benard from carrying out the killing; and (4) defendant assisted Benard in guiding the victim away from the public road and provided Benard with the shotgun used to kill the victim, instead of seeking to prevent the murder. A trier of fact could reasonably deduce from this evidence that defendant had knowledge that Benard was likely going to kill the

victim and took efforts to facilitate the killing instead of minimizing the risk of violence in support of the last two *Clark* factors.

We acknowledge that there was little evidence in the record to suggest the exact duration of the robbery or the length of time between the robbery and the killing, rendering the third *Clark* factor neutral. However, because we conclude that substantial evidence would support a finding that the majority of *Clark* factors weigh in favor of finding defendant acted with reckless indifference to human life, we find no error in the trial court's finding on this issue. Again, even without defendant's parole hearing testimony, substantial evidence supports the trial court's determination that defendant acted with reckless indifference to human life.

D. *The Record Does Not Suggest the Trial Court Failed To Consider Evidence of a Relevant Factor*

Finally, defendant argues in supplemental briefing that reversal and remand is required because the trial court failed to consider defendant's youthfulness as a relevant factor in determining whether defendant was a major participant who acted with reckless disregard. We agree with defendant that under *In re Moore* (2021) 68 Cal.App.5th 434, a defendant's " 'youthfulness' " or maturity is one of the many factors that the trial court should consider in making a finding that defendant was a major participant who acted with reckless indifference to human life. (*Id.* at pp. 453-454.) However, we conclude that the record in this case is inadequate to show that the trial court failed to consider this factor.

"As a general rule[,] ' "a trial court is presumed to have been aware of and [to have] followed the applicable law." ' " (*People v. Bryant*, *Smith and Wheeler* (2014) 60 Cal.4th 335, 398.) It is true that in this case, the trial court's written order does not expressly mention defendant's youth. However, as our Supreme Court has repeatedly explained, "[t]he trial court's mere failure to mention expressly all evidence presented in mitigation . . . does not mean the trial court ignored or overlooked such evidence, but simply indicates that the court did not consider such evidence to have appreciable mitigating weight." (*People v. Samayoa* (1997) 15 Cal.4th 795, 860; *People v. Tully* (2012) 54 Cal.4th 952, 1063-1064 [same].) This reasoning is particularly applicable here, where defendant's age is disclosed in the record, but neither party raised youth as a particularly relevant factor in their arguments before the trial court. Importantly, we note that defendant's age was contained in the psychological reports found in the record, which the trial court considered in assessing defendant's mental capacity.

Defendant urges us to follow the approach taken in *People v. Jones* (2022) 86 Cal.App.5th 1076 (*Jones*), arguing that his case is "virtually identical" to the circumstances presented in *Jones*. In *Jones*, the Court of Appeal reversed the denial of a resentencing petition after the defendant expressly argued before the trial court that youthfulness should be considered a relevant factor in making any factual findings, but the trial court failed to mention the defendant's age or maturity level in providing a detailed explanation of its reasons for denying the petition. (*Id.* at p. 1091.) The Court of Appeal concluded that because "*Moore*—the case holding squarely that a defendant's youth is one relevant factor—was not issued until months" after the trial court's order

25

denying the defendant's petition, it would be "in the interest of justice" for "the trial court to have a meaningful opportunity to consider [the defendant's] youth as part of the totality of the circumstances." (*Id.* at pp. 1092-1093.)

However, even *Jones* acknowledges that under the prevailing rule, a reviewing court should presume the trial court followed the law and duly considered any evidence presented to it. (*Jones*, *supra*, 86 Cal.App.5th at p. 1092.) And in our view, the procedural history of this case does not trigger the exception recognized in *Jones*. The evidentiary hearing and order denying defendant's petition in this case both occurred in January 2022. By this time, *People v. Harris* (2021) 60 Cal.App.5th 939—one of the first published authorities to suggest youthfulness as a relevant factor—had been published authority for nearly a year, and *Moore*—the case squarely holding that a defendant's youth is a relevant factor—had been published authority for months. Thus, unlike in *Jones*, there is no basis to assume that the parties or the trial court in this case were unaware of the relevant law at the time defendant's resentencing petition was heard and denied.

Because the law on the issue was reasonably established at the time of the evidentiary hearing and order on defendant's petition for resentencing, we presume the trial court was aware of and followed the applicable law, absent some indication in the record to the contrary. A silent record is not adequate for this court to conclude the trial court ignored evidence or misapplied the relevant law, and we decline to find error on this basis. In the absence of error, we need not consider the issue of prejudice.

## IV.  DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                    J.

We concur:

RAMIREZ _____
                        P. J.


MENETREZ _____
                    J.